David B. Rosenbaum, No. 009819
Eric M. Fraser, No. 027241
Travis C. Hunt, No. 035491
OSBORN MALEDON, P.A.
2929 N. Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
drosenbaum@omlaw.com
efraser@omlaw.com
thunt@omlaw.com

Andrew G. Strickland (admitted *pro hac vice*)
William B. Dyer, III (admitted *pro hac vice*)
LEE & HAYES, P.C.
75 14th Street, Ste 2500
Atlanta, GA 30309
bill.dyer@leehayes.com
andrew.strickland@leehayes.com

Sarah E. Elsden (admitted *pro hac vice*)
Lee & Hayes, P.C.
601 W. Riverside Ave., Ste. 1400
Spokane, WA 99201
sarah.elsden@leehayes.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EcoFasten Solar, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Unirac, Inc., a New Mexico corporation,<br><br>Defendant. | Case No.: 2:19-cv-05750-MTL<br><br>DEFENDANT UNIRAC INC.'S OPPOSITION TO MOTION FOR SANCTIONS RE SETTLEMENT TALKS |

Defendant Unirac, Inc. opposes Plaintiff EcoFasten Solar, LLC's Motion for Sanctions (Doc. 35) ("Motion"). The Court should deny the motion because it rests on a flawed theory: that a party attending a mediation acts in "bad faith" when the other side finds that party's offer too high or low. Of course, that is wrong. So too is EcoFasten's proposition that the unhappy party can violate Rule 408 and Arizona's mediation privilege by asserting bad faith. Neither the Rule nor the mediation statute leaves open a door for that wide a bus.

## I. INTRODUCTION

EcoFasten's motion is facially inappropriate and lacks merit. At its core, the motion seeks sanctions because Plaintiff did not have its way and get the outcome it wanted during the mediation ordered by this Court. But Unirac's refusal to simply cave in to EcoFasten's settlement demands does not constitute bad faith. Unirac fully complied with the Court's order requiring the parties to engage in good faith settlement talks. It submitted two mediation memoranda, it attended the mediation with counsel and party representatives, and it spent five and a half hours engaged with the mediator the day of the mediation. Equally disturbing is EcoFasten's use of its unfounded "bad faith" assertion to circumvent Fed. R. Evid. 408, Arizona's mediation privilege codified in A.R.S. § 12-2238, and the parties' written mediation agreement. EcoFasten would have this Court create an exception to the privacy of settlement communications that would swallow the rules and, if accepted, forever chill parties' willingness to engage in mediation. By filing its motion, without advance permission to disclose confidential information related to the mediation, Plaintiff violated the Rule and the statute, presumably thinking it was better to later seek forgiveness than ask for permission. The Court should deny the Motion.

## II. BACKGROUND

While EcoFasten's motion freely reveals the parties' confidential, protected settlement positions, it omits much of the important context and key facts surrounding the parties' dispute and the mediation pertinent to its motion. Unirac provides that below.

### A. Since the Parties First Became Involved in Litigation, EcoFasten Has Only Expanded the Dispute

The parties' dispute began in 2018, when Unirac purchased the assets of Bamboo Industries, LLC d/b/a SolarHooks ("SolarHooks"). At that time, SolarHooks was involved in a patent infringement litigation with Rillito River Solar, LLC d/b/a EcoFasten Solar ("Rillito River"), pending in the Eastern District of California. *Rillito River Solar LLC d/b/a EcoFasten Solar v. Bamboo Industries, LLC*, No. 2:17-cv-00181-TLN-CKD (E.D.C.A. filed January 26, 2017) (the "EDCA Action"). There, Rillito River asserted five patents against SolarHooks. In September of 2018, the court issued its claim construction order adopting all claim constructions proposed by SolarHooks. EDCA Action, Doc. 50. The court determined that a phrase appearing in all claims of one of the asserted patents was indefinite, rendering that patent invalid. *Id.* The court's claim construction order also rendered Rillito River's infringement allegations for two of the other asserted patents untenable. Declaration of Andrew G. Strickland ("Strickland Decl."), ¶4. In late 2018, Esdec, Inc. acquired Rillito River and formed EcoFasten, the plaintiff in this case, which took over operations of Rillito River and control of the EDCA Action. *Id.*, ¶5.

Despite the claim construction order, EcoFasten was unwilling to concede or drop any of its patent infringement allegations. SolarHooks had no choice but to continue to defend, even against no-longer-viable claims. It expended substantial time, money, and effort to do so, including acquiring expert opinions regarding the invalidity and non-infringement of the asserted patents at considerable expense (*id.*, Doc. 57 and Doc. 61), and preparing a summary judgment motion on non-infringement and invalidity for all five of the asserted patents. *Id.*, Doc. 64.

In contrast, and perhaps as an indication of EcoFasten's own view of its case, it did not serve expert reports for infringement or validity of any of its patents. Instead, the only expert report EcoFasten filed was for damages. In EcoFasten's response to Solarhooks' summary judgement motion, it conceded—for the first time—no infringement for two of the patents and invalidity for the patent with claims rendered indefinite by the court's claim

2

construction. *Id.*, Doc. 66. SolarHooks' summary judgment motion has been pending for almost two years, and the EDCA Action is stayed pending a ruling on that motion.

Recognizing that it was unlikely to prevail in the EDCA Action, EcoFasten filed the present contract action against Unirac on November 14, 2019. Here, EcoFasten alleges Unirac breached certain contracts between the parties, and that EcoFasten also possesses rights in certain other intellectual property developed by Unirac. The case is currently in fact discovery, which closes April 6, 2021. Dispositive motions are due in September 2021.

Apparently unsatisfied with the posture of the EDCA Action and this case, EcoFasten filed yet another case against Unirac in October 2020, this time asserting two patents in the District of New Mexico. *EcoFasten, LLC v. Unirac, Inc.*, No. 1:20-cv-01008-LF-JFR (D.N.M. filed October 2, 2020) (the "DNM Action"). The DNM Action is still in its early stages, with Unirac only recently filing an Answer on February 5, 2021. An initial case management conference is scheduled for March 26, 2021. DNM Action, Doc. 17. And on February 12, 2021, Unirac filed a petition in the U.S. Patent and Trademark Office seeking *inter partes* review (IPR) of one of the patents-in-suit (*Unirac, Inc. v. EcoFasten Solar, LLC*, No. IPR2021-00532 (P.T.A.B. filed February 12, 2021) with another petition soon to follow for the other patent.

**B.     EcoFasten Has Continually Increased Its Settlement Demands**

The parties have made several attempts since 2019 to resolve their disputes. Strickland Decl., ¶6. This includes Unirac making a substantial payment to EcoFasten in connection with this case in a good faith effort to move the parties closer to complete settlement. *Id.* Despite Unirac's efforts, and the clear weaknesses of EcoFasten's cases, EcoFasten's settlement demands have only increased. Abiding by its obligations under Rule 408, A.R.S. § 12-2338, and the parties' mediation agreement, Unirac will neither reveal the specific terms of EcoFasten's demands nor its specific settlement communications. But the general facts related to those settlement discussions are outlined below.

On January 18, 2019 in the EDCA Action, EcoFasten served on SolarHooks, and filed with the court, an expert report related to patent infringement damages for a product that,

with minor modifications, Unirac now sells as the FlashKit Pro, which the main product at issue in this case. Strickland Decl., ¶7. In that report, Rillito River's expert opined that a reasonable royalty for sales of that product fell within a range that was a small fraction of EcoFasten's most recent settlement demand in this case. *Id.* In July 2019, EcoFasten upped its demands and offered to settle all disputes for a lump sum and a running royalty over two-and-a-half times higher than the lower end of what its own expert in the EDCA Action opined as reasonable—*i.e.*, an "unreasonable" royalty by definition. *Id.*, ¶8. After Unirac countered with the same lump sum payment but a royalty consistent with that proposed by EcoFasten's expert as "reasonable" in the EDCA Action, EcoFasten responded by *increasing* its settlement demands to an even higher up-front payment and *doubling* its per-unit running royalty. *Id.* Even more egregiously, EcoFasten's most recent demand, made in connection with the mediation, represents yet another increase in the lump sum of its last offer and *doubles yet again* the running royalty. *Id.*, ¶9. To be clear, EcoFasten's most recent royalty demand is almost *seven times greater than the* **high end of the range** that EcoFasten's expert in the EDCA opined as "reasonable" for essentially the same product. *Id.*

### C.  Leadup to the Mediation, Including EcoFasten's Agreement That It Made Sense To Resolve All of the Parties' Disputes

In its initial scheduling order issued on February 4, 2020, this Court required the parties to "engage in good faith settlement talks." Doc. 18. Given the parties' litigation history and multiple pending cases, Unirac believed that it was in the interests of both parties to seek a global resolution of all disputes. On November 2, 2020, EcoFasten confirmed that the mediation between the parties would not be limited to this action only. Strickland Decl., ¶10. EcoFasten's claim that Unirac's alleged "insistence that it would not consider possible resolutions of this action alone, is bad faith" is disingenuous when EcoFasten agreed to a broader discussion in advance.

Leading up to the mediation, the parties exchanged various confidential and protected settlement communications. With the preface "as…required under the mediation agreement," EcoFasten presented its demand on December 18. This demand, as already discussed above,

4

represents an *increase in the lump sum* of its last offer, and proposes a running royalty almost *seven times greater than the high end* of the range considered reasonable by EcoFasten's own expert in the EDCA Action. EcoFasten's claim that immediately before the mediation, "the parties found themselves in the familiar position of having opening offers slightly off their respective 'best days' at trial (indicating a mutual willingness to compromise more)," (Motion, at 4-5) is patently untrue. Even in the "best days" of its EDCA action, EcoFasten did not seek the outrageous royalty of its most recent demand.

In light of the facts and circumstances surrounding the parties' disputes and prior settlement discussions, from Unirac's perspective, EcoFasten's mediation demand was not a serious offer.

**D.    EcoFasten's Settlement Behavior Forces Unirac To File Its Own Cases**

Weary of continuing to engage with EcoFasten only to have EcoFasten escalate the dispute and increase its demands, Unirac acted. By the end of 2020, an investigation by Unirac revealed that EcoFasten and its related companies were infringing Unirac patents on a widespread scale. Accordingly, Unirac filed three patent actions of its own against these infringing companies on January 20, 2021.

In the first case, *Unirac, Inc. v. EcoFasten Solar, LLC and Esdec, Inc.*, No. 1:21-cv-00058 (D. Del. filed January 20, 2021), Unirac asserts three U.S. patents against EcoFasten's "ClickFit" product line. In the second case, *Unirac, Inc. v. EcoFasten Solar, LLC and Esdec, Inc.*, No. 1:21-cv-00059 (D. Del. filed January 20, 2021), Unirac asserts two U.S. patents in against EcoFasten's "RockIt" product line. In the third case, *Unirac, Inc. v. Wencon Development, Inc. d/b/a QuickMount PV Corp. and Esdec, Inc.*, No. 3:21-cv-00478 (N.D. Cal. Filed January 20, 2021), Unirac asserts two U.S. patents against QuickMount's "QRail System" products.

In its motion, EcoFasten dismisses Unirac's offensive litigation as simply an attempt "to create leverage out of thin air with new cases filed on both coasts." Motion, at 8. But EcoFasten has not alleged that Unirac does not have a reasonable basis for bringing these cases, nor can it do so. While these new actions are in their early stages, Unirac fully intends

to prosecute them, and has brought on additional counsel to assist in doing so. Mr. Woo of Duane Morris LLP, mentioned in Plaintiff's pleading (Motion, at 5), is one of those counsel. On information and belief, the EcoFasten and QuickMount product sales implicated in these lawsuits run into the hundreds of millions of dollars.

### E. Unirac's Active Participation in the Mediation Session and Process

The parties' mediation session took place by videoconference on January 27, 2021, before mediator Michael Powell of Atlanta, Georgia. Strickland Decl., ¶11. Before the mediation, counsel for Unirac, party representatives of Unirac, and Mr. Powell participated in a call approximately two hours long. *Id.* The January 27, 2021 mediation session lasted from approximately 10:30 AM to at least 2 PM Eastern time, and Unirac continued to discuss the mediation with Mr. Powell until approximately 4 PM. *Id.*, 12. Counsel and representatives for Unirac came prepared to discuss the merits of all the cases in detail and to explore a global resolution of all pending disputes, as agreed to by EcoFasten. Mr. Powell met privately with each party and/or its counsel multiple times in breakout sessions during the day. *Id.* In the end, the parties did not agree on a settlement. *Id.* But they did meet for several hours and discussed the substance of their disputes in the context of settlement.

## III. ARGUMENT

### A. Unirac Fully Discharged Its Obligation to Engage in Settlement Talks in Good Faith

EcoFasten cites no case supporting the idea that a court may issue sanctions because one party makes or sticks to an offer deemed unreasonable by the other during a court-ordered mediation.

Lacking a case on point, EcoFasten looks to the unrelated law of obscenity. While the "I know it when I see it" standard may apply in that first amendment context, it does not here. *Jacobellis v. Ohio*, 84 S.Ct. 1676, 1683 (1964) (Stewart, J., concurring). In fact, some district courts in the Ninth Circuit have identified a standard for mediation: "While the Court does expect each party in a lawsuit to engage in meaningful alternative dispute resolution and participate in 'good faith,' this is a subjective standard and the Court will not award fees

based upon one party's interpretation of that standard." *Layton v. Eagle Rock Timber, Inc.*, No. 4:17-cv-00259-DCN, 2018 U.S. Dist. LEXIS 186512, at *7 (D. Id. Oct. 29, 2018) (denying sanctions).

### 1. Unirac Acted in Good Faith

Under any standard—whether Justice Stewart's obscenity standard or the standard of *Layton*—Unirac engaged in good faith settlement talks with EcoFasten. Unirac was actively involved in selecting a mediator and, in fact, identified and suggested the very mediator that the parties ultimately used. Strickland Decl., ¶11. Unirac joined in a stipulation to reset the deadline to conclude settlement talks under the Court's scheduling order. Unirac submitted not just one, but two, confidential mediation statements to the mediator, each approximately twenty pages (with multiple exhibits) addressing the substance of every material dispute between the parties. *See id.* Unirac gave EcoFasten notice of its revised settlement offer several business days ahead of the scheduled mediation session and set forth the specific bases for its revision. *See id.,* ¶ 13. Unirac held a pre-mediation conference with the mediator, lasting almost two hours, to explain its positions and its proposal. *See id.,* ¶ 11. Unirac attended the session with an authorized representative and counsel from several of the pending lawsuits between the parties to discuss a global resolution, as the parties agreed. *See id.* Unirac and its representatives participated by videoconference, met with the other side and the mediator for five and a half hours, including joint and breakout sessions. *Id.* None of this indicates bad faith. To the contrary, it shows substantial good faith and adherence to the court-ordered process.

If the Court has questions about how the parties comported themselves before and during the mediation, Unirac would support an *ex parte* communication between the Court and the mediator, Michael Powell. For the Court's convenience, Mr. Powell's contact information is:

> Michael J. Powell
> Powell Law, LLC
> 10 Glenlake Parkway, Suite 130
> Atlanta, GA 30328
> email: mjp@NavigatingIP.com
> telephone no.: (678) 222-3444.

7

### 2. None of Unirac's Actions Are Bad Faith

First, EcoFasten argues that Unirac's timing and filing of three lawsuits—allegedly "targeted toward the intended result of presenting EcoFasten with no opportunity to settle this case without giving in to the artificially created pressure to settle three new cases"—is "classic bad faith." Motion, at 7. In essence, EcoFasten argues that it is bad faith for Unirac to file its own suits against EcoFasten and raise the same during a mediation intended to resolve all issues among the parties. If anything, filing those lawsuits before a global mediation shows good faith, putting all disputes on the table. Notably, EcoFasten does not allege that Unirac lacked a reasonable basis to file any of its new cases, or that any of Unirac's new cases are a "sham." Absent such evidence, it is not bad faith for Unirac to exercise its constitutional right to file its own suits and take up mediation positions based on those litigations. *See Prof. Real Estate Investors, Inc. v. Columbia Pictures, Inc.* 113 S.Ct. 1920, 1929 (1993) ("[S]ham litigation must constitute the pursuit of claims so baseless that no reasonable litigant could have realistically expect to secure favorable relief.").

Second, EcoFasten asserts that it was bad faith for Unirac to "refus[e] to accept the fact that negotiation of [Unirac's] new lawsuits was premature, and insistence that it would not consider possible resolutions of this action alone." Motion, at 7. This issue was squarely addressed in *Layton*, where the defendant attended a mediation session, but "did not 'negotiate' as [plaintiff] would have liked and did not make a counteroffer." *Layton,* 2018 U.S. Dist. LEXIS 186512 at *4. The court denied sanctions, recognizing that "there are numerous explanations for this other than [defendant] was just trying to waste time and money." *Id.* at *5. Similarly, here, Unirac did not negotiate with EcoFasten during mediation in the way the plaintiff would have preferred, instead requesting that EcoFasten consider Unirac's own cases in a global resolution of all disputes. That may not have been the outcome EcoFasten wanted, but it is not bad faith. It is disingenuous for EcoFasten to argue that resolution of "this action alone" should have been the sole focus of the mediation when EcoFasten itself agreed that the mediation should cover the broad resolution of all disputes between the parties. EcoFasten was fine with discussing global resolution if it was the only

party filing cases.

Third, EcoFasten asserts that it was bad faith for Unirac to make a new proposal to EcoFasten in view of its new lawsuits, which plaintiff alleges "created a situation where…a settlement here was impossible." Motion, at 8. Unirac has a constitutional right to bring a meritorious lawsuit. And there was nothing—in the parties' mediation agreement, this Court's scheduling order, or otherwise—prohibiting Unirac from revising its proposal to consider the value of its lawsuits. That EcoFasten was unwilling to acknowledge the reality it has now been sued in three patent actions on multiple product lines with millions of dollars at stake, such that "settlement here was impossible," cannot be laid at the feet of Unirac as bad faith.

### 3. The Cases Cited By EcoFasten Show Unirac's Good Faith, Not Bad Faith

Each case cited by EcoFasten in which sanctions was awarded rested on procedural violations or bad behavior in and outside the mediation. Not a single one rests on the substantive offers made or refused. Unirac's actions leading to and during the mediation were the antithesis of those sanctioned.

In *Rizzo v. City of Phoenix*, No. CV-15-00829-PHX-NVW, 2016 U.S. Dist. LEXIS 200033 (D. Ariz. Apr. 11, 2016), plaintiff's counsel walked out of an agreed-upon mediation session after five minutes. No such thing occurred here. Unirac participated for approximately five and a half hours, during which Unirac (through its attorneys and representatives) spoke multiple times with the mediator and EcoFasten.

In *Edwards v. Veema Nutrition*, No. CV-17-2133-PHX-DWL, 2019 U.S. Dist. LEXIS 189949 (D. Ariz. Nov. 1, 2019), sanctions were awarded because the *pro se* plaintiff sent "menacing" text messages to opposing counsel to coerce a settlement, such as "Try filing any paper[,] punk[,] [and] watch where you land up—behind Federal Bars!" and "Alright, keep playing with me. You'd better take care of your business, bro." *Id.* at *22. No such facts are remotely present here.

In *Apelian v. Allstate Insurance Co.,* No. LA CV-16-4977 GHK (PLAx), 2016 U.S.

Dist. LEXIS 176804 (C.D. Cal. Dec. 20, 2016), defendant's counsel filed her mediation statement two days past the court-ordered deadline without apology or substantial explanation, failed to address seven of the eight issues the court had ordered the parties to address in the mediation statement, gave no advance notice of a key non-negotiable condition for Defendant to consider settling, and—after all that—attempted to mislead the court about the time of her late arrival to the mediation session. Sanctions were awarded, given these egregious facts, which again, are not present here.

In *Pitman v. Brinker International*, No. CV02-1886-PHX-MHM, 216 F.R.D. 481 (D. Ariz. July 8, 2003), the defendant failed to bring a representative to the settlement conference with full settlement authority, as ordered. No similar facts occurred here as Unirac's representatives participating in the mediation had settlement authority.

**B.   EcoFasten's Motion Upends Rule 408 and A.R.S. § 12-2238 and Breaches the Parties' Mediation Agreement**

There is a reason EcoFasten can find no case in which a party was sanctioned for making an offer the other side deemed offensive, too high, or too low: taking a tough settlement stance is not bad faith and exposing the parties' offers and counters—or threatening to expose them—would undermine the public policy embodied in Rule 408 and Arizona's mediation statute.

This is made clear by EcoFasten's Motion. The Motion reveals the confidential, protected settlement positions of Unirac,[1] in violation of Rule 408 and A.R.S. § 12-2238 and in breach of the mediation agreement entered into between the parties. Among other things, EcoFasten's Motion disclosed:

- Unirac's confidential settlement offers made in connection with the mediation (*see* Motion, at 3-6);

---

[1] While many of the statements made by EcoFasten regarding Unirac's settlement positions and communications are not facts, but simply EcoFasten's characterizations of the facts, Unirac refrains from revealing the actual positions and communications so as to maintain the protections of Fed. R. Evid. 408, A.R.S. § 12-2238, and the parties' mediation agreement.

10

- Unirac's attendees at the mediation (Motion, at 4-6); and
- Confidential statements made and substantive positions taken by Unirac during the mediation (Motion, at 4-6).

These are quintessential protected communications under Rule 408 and A.R.S. § 12-2238, and under the parties' signed mediation agreement.

Rule 408 protects evidence of a party's conduct or statements made during compromise negotiations about a disputed claim. Fed. R. Evid. 408. EcoFasten argues that it is not introducing these communications and statements to prove the validity or value of a claim, and therefore they can be revealed and considered. Motion, at 2. But that argument rings hollow: EcoFasten no doubt wants the Court to assess and weigh the parties' respective settlement positions as to the merits of the financial demands—set out, of course, in a one-sided narrative most favorable to EcoFasten and under the guise of a sanctions motion brought solely because EcoFasten did not like the mediation's result. Rule 408 provides for no such exception.

Likewise, A.R.S. § 12-2338 provides that "[c]ommunications made, materials created for or used and acts occurring during a mediation are confidential and may not be discovered or admitted into evidence" unless one of a few narrow exceptions is met. The principle urged by EcoFasten here—that one party's challenge to the counterparty's subjective good faith will waive any protection over confidential mediation communications—is an exception that would swallow the rule. The Arizona legislature had a clear purpose in enacting § 12-2238: facilitating mediation as a dispute resolution tool. *See, e.g., Grubaugh v. Blomo ex rel. County of Maricopa*, 238 Ariz. 264, 269, ¶14, (App. 2015) ("By protecting *all* materials created, acts occurring, and communications made as a part of the mediation process, A.R.S. § 12-2238 establishes a robust policy of confidentiality of the mediation process that is consistent with Arizona's strong public policy of encouraging settlement rather than litigation." (emphasis in original, internal citations omitted)). Inviting motions such as EcoFasten's would frustrate that policy and have a chilling effect on mediation as a useful tool. Any time a party is dissatisfied with the outcome of mediation, it could move for sanctions to expose the other

side's positions suffering no consequences.

Compounding the problem created by EcoFasten's flaunting and violation of Rule 408 and A.R.S. § 12-2338, EcoFasten also breached the parties' mediation agreement. Relevant to the present Motion, that agreement provided:

> 7. **Confidentiality.** All statements made and all documents offered by any party in connection with the mediation *are confidential and shall not be disclosed* to persons, firms or entities not involved with the mediation. * * * The mediation is considered by all parties to be compromise/settlement negotiations within the meaning of Georgia Law, the Federal Rules of Evidence and LR N.D.Ga 16.7 (or similarly applicable United States District Court local rule).

Doc. 35-1 (O'Hara Moving Decl., Ex. B, at 2) (emphasis added).

EcoFasten conveniently ignores this provision of the mediation agreement. Moreover, unlike Rule 408 and A.R.S. § 12-2338, *there are no exceptions* to the confidentiality provision of the mediation agreement.

Knowing full-well that its present motion reveals Unirac's protected settlement positions and communications, EcoFasten did not even attempt to confer with Unirac before filing the motion, nor did it seek permission to file under seal. Instead, EcoFasten engaged in self-help, creating its own "exception" to Rule 408 and A.R.S. § 12-2338, and breaching the parties' mediation agreement while doing so.

## IV. CONCLUSION

Unirac respectfully requests that the Court deny Plaintiff's Motion.

DATED this 16th day of February, 2021.

LEE & HAYES, P.C.

By: */s/ Andrew G. Strickland*
Andrew G. Strickland (*pro hac vice*)
William B. Dyer, III (*pro hac vice*)
Lee & Hayes, P.C.
75 14th Street, Ste 2500
Atlanta, GA 30309

Sarah E. Elsden (*pro hac vice*)
601 W. Riverside Ave., Ste. 1400
Spokane, WA 99201

Attorneys for Defendant
