Sean J. O'Hara (#024749)
Daniel P. Crane (#030623)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
sjo@kflawaz.com
dpc@kflawaz.com

*Attorneys for Plaintiff EcoFasten Solar*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE STATE OF ARIZONA

| | |
|---|---|
| EcoFasten Solar, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>Unirac, Inc., a New Mexico corporation,<br><br>Defendant. | Case No. 2:19-cv-05750-MTL<br><br>**REPLY IN SUPPORT OF MOTION FOR SANCTIONS FOR FAILURE TO PARTICIPATE IN GOOD FAITH SETTLEMENT TALKS** |

Plaintiff EcoFasten Solar, LLC ("EcoFasten") respectfully submits this reply in support of its motion for an order imposing sanctions on Defendant Unirac, Inc. due to Unirac's failure to participate in Court-ordered good faith settlement talks.

**I.   Introduction**

Stripped of its bluster and indignation, Unirac's opposition attempts to strawman EcoFasten's position as seeking sanctions because Unirac filed lawsuits and made a less-favorable settlement offer than it had before. That's not what this motion is about. EcoFasten seeks sanctions not because of *what* Unirac did, but because of *how* and *when* Unirac did it. Because Unirac waited until mere days before a long-scheduled mediation

to file three lawsuits and dramatically back-peddle its earlier offer, and because Unirac demanded that its fresh-off-the-presses lawsuits be resolved as a precondition to resolution of this case, Unirac ensured that the mediation would be a complete waste of time and money. That's not good faith, and Unirac should be ordered to compensate EcoFasten.

## II.  Unirac's Bad Faith Decisions Doomed the Mediation.

Unirac's response attempts to distract the Court with a flurry of irrelevant and unrelated arguments. But the issue raised by EcoFasten is not that the parties were unable to reach a resolution, it is how it came to be that the parties had no chance to reach a resolution. Sanctions are appropriate against Unirac because Unirac unequivocally caused EcoFasten to unnecessarily expend resources when Unirac was dead-set on ignoring EcoFasten's efforts. *See Rizzo v. City of Phoenix*, No. CV-15-00829-PHX-NVW, 2016 WL 11602424, at *1 (D. Ariz. Apr. 11, 2016) (discussing that good faith settlement efforts are intended to avoid "wast[ing] without justification the effort and expense the parties put into the mediation preparation.").

There is no dispute that Unirac waited until after the parties had exchanged settlement offers and prepared mediation briefs—and within a week of the mediation—to file three new lawsuits against EcoFasten, its parent company, and a sister company about unrelated products and patents. Instead of attempting in good faith to resolve this dispute, Unirac waited until the twelfth hour to interject new issues and damages claims that Unirac contends greatly exceed the damages sought in this action. Worse, Unirac then insisted that there could be no resolution of this lawsuit without resolution of Unirac's new lawsuits. Tellingly, Unirac does not dispute that its decision to make the three new lawsuits the central issue in the mediation guaranteed that the parties were mediating without sufficient information and without hope of reaching a resolution.

Given no new circumstances other than the impending mediation, Unirac found it more desirable to cause EcoFasten to incur attorneys' fees and mediator's fees by participating in a doomed mediation. This is direct and intentional ignorance of this

Court's order requiring *good faith* settlement talks. EcoFasten requests this Court sanction Unirac for willfully disregarding the purpose and intent of the order to engage in good faith settlement discussions by allowing EcoFasten to apply for its fees and costs incurred in connection with the sham mediation.

### III.     Unirac's Response is a Parade of Red Herrings.

Unirac's response is telling. Instead of arguing that the parties were still positioned to have meaningful, good-faith settlement talks despite the introduction of three new lawsuits, Unirac attempts to distract and shift the blame by: (i) arguing that EcoFasten's motion is about not reaching a settlement – an effort to sidestep answering *why* the mediation was a waste; (ii) asserting that Rule 408 and A.R.S. § 12-2238 somehow prohibit a Court from considering Unirac's conduct when determining if Unirac acted in good faith; and (iii) suggesting that Unirac's filing of new lawsuits and negotiating backwards in the days leading up to the mediation is no different than EcoFasten's changed negotiating positions over the past several years.

Unirac's response does make one helpful point. Unirac requested the Court have *ex parte* communications with the mediator, Michael Powell, to get Mr. Powell's perspective on how the parties comported themselves in (and leading up to) the mediation. EcoFasten fully supports this suggestion and believes that, should he be willing to talk with the Court, Mr. Powell's perspective would be enlightening.[1]

####     a.     It Is the How and the When, Not the What, That Is Sanctionable.

Unirac suggests that it is "[w]eary of continuing to engage with EcoFasten only to have EcoFasten escalate the dispute and increase its demands . . . ." So, Unirac says, it filed the three new lawsuits on the eve of mediation escalating the parties' disputes. That doesn't add up.

As explained by EcoFasten in its motion (and not disputed in the response), the parties and their affiliates have litigated their issues since 2017:

---

[1] After Unirac refused to join a final joint session with the mediator, undersigned counsel informed the mediator that the present motion would be forthcoming. Mr. Powell's reaction was enthusiastic, including a literal "thumbs up."

3

- January 26, 2017, a patent infringement lawsuit filed by EcoFasten pending in the United States District Court for the Eastern District of California. This lawsuit was filed against SolarHooks before its acquisition by Unirac, concerning the predecessors to Unirac's new FlashKit Pro and FlashKit TR.

- November 14, 2019, EcoFasten filed this lawsuit arising out of Unirac's breach of contracts for the purchase of the entire solar panel mounting systems.

- October 2, 2020, EcoFasten's patent infringement lawsuit against Unirac in the District of New Mexico arising out of patents covering the entire solar panel mounting system.

- January 20, 2021, Unirac filed three new lawsuits alleging that EcoFasten's and an affiliate's products infringe certain Unirac patents.

Unirac points to EcoFasten's filing of lawsuits and the resulting changes in its negotiating position to argue that Unirac isn't doing anything that EcoFasten hasn't done. But the above timeline reveals the problem EcoFasten has with Unirac's conduct. The first lawsuit was brought in 2017 against a small company long before it was acquired by Unirac. This action was filed in 2019 after pre-litigation attempts to resolve Unirac's breaches failed, and the New Mexico lawsuit was filed as soon as long-prosecuted patent finally issued. Not to put too fine a point on it, but none of these lawsuits were filed in the days leading up to a mediation, and when the parties agreed to mediate this case on January 27, 2021, both sides had substantial discovery into the claims and damages at issue.[2]

In contrast, no "real world" developments brought about Unirac's recent lawsuits, and Unirac concedes that they were nothing more than a reaction against EcoFasten's settlement offer. In a vacuum, there's nothing inherently improper about that. But the world is not a vacuum, and by the time Unirac deigned to tell EcoFasten that it believes EcoFasten is infringing Unirac's patents, the parties had already invested substantial time and money in a mediation that was just days away.

---

[2] Though discovery has not commenced in the New Mexico suit, that case concerns the same FlashKit Pro and FlashKit TR products as this action. If 28 U.S.C. § 1400 did not require patent infringement actions to be prosecuted in Unirac's home district, EcoFasten would have sought leave to amend the complaint in this action to assert those claims in this action.

4

Unirac's opposition suggests that the timing of these new lawsuits is just an unhappy accident. But that premise is unsupportable. Unirac would lead this Court to believe that its "investigations" towards "the end of 2020" prompted it to file the new lawsuits. But "end of 2020" is just a euphemism for "after receiving EcoFasten's pre-mediation settlement demand," and it is undisputed that none of the patents asserted or products accused are "new"—all patents were issued, and products launched, years ago.

The only plausible reason for Unirac to file the new lawsuits and demand those be addressed days later in a mediation is that Unirac had no intention of discussing settlement of ***this*** lawsuit in good faith.[3] Unirac had several options it could have turned to other than waste EcoFasten's time and efforts with a doomed mediation. The most obvious option, and the one that is most consistent with a genuine desire to protect intellectual property, is to timely file the lawsuits when the allegedly infringing products come to market or when the patents are issued. Unirac passed on that option years ago. Another would be to request a further continuance of the mediation so that EcoFasten could have an opportunity to evaluate the new claims. Or, Unirac could have cancelled the mediation entirely and the parties could discharge their obligations under the order by having a less-expensive discussion between counsel. Yet another would be to discuss settlement of the cases related to the same products and intellectual property (i.e., not the brand-new lawsuits) while leaving Unirac the ability to pursue other claims. But Unirac chose to instead make a mockery of the Court's order for good faith settlement negotiations and to cause EcoFasten to incur unnecessary expense.

EcoFasten's motion is not about the parties not reaching a resolution. It's not about what offers either party made, or even the new lawsuits Unirac filed. It is about ***how***, and ***when***, Unirac attempted to shift the negotiations immediately before the parties mediated. Unirac, much like the plaintiff in *Rizzo*, made a non-negotiable and surprise demand that

---

[3] Unirac's reliance upon *Layton v. Eagle Rock Timber, Inc.*, No. 4:17-CV-00259-DCN, 2018 WL 5499541 (D. Idaho Oct. 29, 2018) is not persuasive. One, the issue in *Layton* is that one party never made an offer during mediation but spent hours there anyway. Unirac made an offer, revoked the offer only to demand an exorbitant amount related to brand new lawsuits, condemning the mediation to failure. Two, *Layton* applies Idaho law which does not, for example, permit consideration of settlement negotiations when fashioning attorneys' fee award – something Arizona law certainly permits.

5

included resolving the new lawsuits—something Unirac knew EcoFasten could not reasonably consider just a few days after the lawsuits had been filed. This caused an "unjustified waste of resources" because Unirac filed what it calls its "offensive litigation" immediately before the mediation. When EcoFasten proved unwilling to immediately cower in the face of the "offensive litigation," Unirac's actions ensured the parties could not engage in meaningful settlement discussions.

### b. Confidentiality Does Not Conceal Violations of Court Orders.

Unirac pleads with this Court to not consider its conduct leading up to and during the mediation because of a supposed veil of secrecy. But adopting Unirac's conception of mediation confidentiality would render meaningless all orders to participate in settlement discussions in "good faith." Unirac's position conflates two issues: (1) the purpose of confidentiality; and (2) admissibility as evidence.

First, confidentiality agreements (like those regularly contained in mediation agreements) do not prohibit filings with the court but, instead, bear on whether the filing should be requested under seal or not. Although EcoFasten doubts that the public interest in open court records and whether litigation conduct is sanctionable or not is outweighed by the parties' interests in having confidential negotiations, EcoFasten does not oppose Unirac's request to seal the details discussed in EcoFasten's motion. Tellingly, Unirac did not seek to have its opposition filed under seal, preferring instead to avoid reckoning with the facts by omitting them entirely. Confidentiality agreements do not operate against the Court, and do not insulate a party's conduct from scrutiny.

Second, Rule 408 and A.R.S. § 12-2238 discuss the admissibility of evidence for limited purposes. EcoFasten's motion for sanctions does not go the merits of this lawsuit. Rather, the motion addresses Unirac's efforts to disregard the Court's order to engage in settlement discussions in good faith. The Court must be able to consider parties' conduct in, and leading up to, a mediation otherwise the Court cannot appropriately determine if a party has acted in "bad faith" like Unirac has done so here. This is apparent from the discussion in *Rizzo* and in *Edwards v. Vemma Nutrition*, No. CV-17-02133-PHX-DWL,

2019 WL 5684192, at 11 n.10 (D. Ariz. Nov. 1, 2019) (denying Rule 408 objection to offers of compromise when considering a motion for sanctions) and *Pittman v. Brinker Int'l, Inc.*, 216 F.R.D. 481, 485 (D. Ariz. 2003) (imposing sanctions for "attending the settlement conference despite the high unlikelihood of a settlement"). The body of case law in this District demonstrate that parties are entitled to apprise the Court of sanctionable conduct.

While Unirac attempts to portray EcoFasten's motion as an end-run around Rule 408, A.R.S. § 12-2238, Unirac cannot dispute that it informed EcoFasten of its new claims and demands just days before the mediation, and after EcoFasten spent hours preparing for the mediation, exchanging early settlement offers, and meeting in advance with the mediator per his usual process. Simply, Unirac pulled the rug out from under the mediator and EcoFasten making all of that effort moot. Confidentiality and Rule 408 and A.R.S. § 12-2238 cannot shield Unirac's bad faith conduct from this Court's consideration.

    **c.**    **Unirac Cannot Hide Behind a Desire for a "Global Resolution."**

Unirac attempts to blur the facts when it comes to the global resolution the parties intended to discuss at the mediation. First, Unirac tries to prop itself up as being in the right by stating that it was the party to propose "a global resolution of all disputes." But Unirac fails to point out that the "global settlement" it suggested back in November 2020 sought discussion of a resolution of the disputes "related to the same products/IP." *See* Email string between A. Strickland & S. O'Hara, Nov. 3, 2020, attached as Ex. 1. Unirac's new lawsuits do not relate to the "same products/IP" and were not contemplated by anyone as part of the parties' "global dispute" until right before the mediation. In short, Unirac proposed a global settlement concept and then waited until the last minute to greatly expand the disputes to unrelated intellectual property and products wasting EcoFasten and the mediator's efforts to engage in informed settlement discussions. Again, there is nothing wrong with wanting a global resolution, but it is not good faith to insist on a global resolution despite waiting until the last minute to make that "global dispute" much larger.

Nor is Unirac's attendance at the mediation in pursuit of the elusive "global resolution" enough to satisfy the duty of good faith. If it were, a party could pull all manner of bad-faith stunts in the lead-up to mediation or during the mediation itself and escape sanctions so long as its representatives patiently waited for the mediator or the other side to get fed up. This mediation was doomed to fail the minute Unirac decided it would try to ambush EcoFasten with three new non-negotiable claims on the eve of mediation, and Unirac's subsequent clock-punching at the mediation does not absolve it.

### d. Unirac's Gripes About EcoFasten's Settlement Offers Are Irrelevant and Misplaced.

Unirac tries to justify its 12th-hour expansion of the dispute between the two parties with the new lawsuits by claiming that EcoFasten itself made a settlement offer seeking more than the reasonable royalty it contends it is entitled to in the Eastern District of California patent lawsuit. This is a feeble attempt to gloss over the fact that the reasonable royalty damages sought in that lawsuit are limited by patent law concepts, while the rights and obligations created by the parties' agreements at issue in this action are much greater. Put another way, a reasonable royalty in a patent infringement lawsuit must consider the smallest saleable patent practicing unit, while in this action, EcoFasten can seek lost profit and royalty damages for entire product assemblies if they fall within the scope of EcoFasten's exclusive rights by contract.

## IV. Conclusion

Of course, Unirac doesn't have to settle this case if it doesn't want to. And subject to Rule 11, Unirac can file whatever lawsuits it wants to. But Unirac cannot ignore this Court's order to conduct good faith settlement talks, and timing matters. If Unirac were genuinely aggrieved by EcoFasten's supposed infringement of its intellectual property, Unirac could have brought the new lawsuits years earlier and the parties may well have been able to reach a "global resolution" on January 27. That's not what Unirac did. It is simply not good faith to wait until after the parties had submitted mediation briefs and exchanged offers to file three new (and unrelated) lawsuits, and then insist that any compromise of this case is off limits unless EcoFasten first acknowledges an obligation to

compensate Unirac for its alleged damages in the new lawsuits. As a result of this failure to act in good faith, the mediation was an expensive waste of time. To that end, EcoFasten respectfully requests that the Court enter the order awarding EcoFasten its attorneys' fees and costs incurred engaging in a mediation process that Unirac turned into a farce.

DATED this 23rd day of February 2021.

KERCSMAR & FELTUS PLLC

By *s/ Sean J. O'Hara*
Sean J. O'Hara
Daniel P. Crane
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
*Attorneys for Plaintiff EcoFasten Solar*